UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAROLD STEWARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:12-CV-3844-B |
| | § | |
| THE PRUDENTIAL INSURANCE | § | |
| COMPANY OF AMERICA and PNM | § | |
| RESOURCES, INC., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are cross motions for summary judgment filed by Plaintiff Garold Steward(doc. 34) and Defendants PNM Resources, Inc. (doc. 27) and The Prudential Insurance Company of America (doc. 30). After reviewing the parties' filings and the relevant law, Plaintiff's motion is **DENIED** and Defendant PNM Resources, Inc.'s motion is **GRANTED**. The Court disposes of the case without reaching the merits of The Prudential Insurance Company of America's motion.

I.

BACKGROUND[1]

Plaintiff Garold Steward filed the above-captioned case against Defendants The Prudential

---

[1] The facts are derived from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, the facts are undisputed. References to the Appendix in Support of Plaintiff's Motion for Summary Judgment (doc. 36) are cited as "Pl.'s App. __," and references to the Appendix to Defendant PNM Resources, Inc.'s Motion for Summary Judgment (doc. 29) are cited as "PNMR App. __".

Insurance Company of America ("Prudential") and PNM Resources, Inc. ("PNMR") pursuant to Section 1132(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") in response to the denial of his claim for short term disability benefits.

A.    *Factual History*

   1.    The Short Term Illness/Injury Plan

Plaintiff was employed by PNMR as a Manager of Information Security until April 2012. Compl. 2; Pl.'s App. 14. During his employment Plaintiff was covered by PNMR's Short Term Illness/Injury Plan ("Short Term Plan"), which was funded by PNMR but administered by Prudential. Compl. 2; PNMR Br. 2. According to the Short Term Plan, "Disability" or "Disabled" means that either:

> (1) an Employee is absent from work because of the presence of an impairment for which there is material objective medical evidence that prevents the Employee from performing the essential function of his own job or any other job that the Company offers, for which he/she is reasonably qualified by reason of education, training, or experience; or (2) an Employee is Partially Disabled.

PNMR App. 7, ¶ (i). The Short Term Plan also provides that "[t]he determination of whether an Employee is Disabled shall be made in the sole discretion of the Claims Administrator, based upon the objective medical evidence that the Claims Administrator determines to be relevant to the Employee's claim." *Id.* at 10, ¶ 4.1.

   2.    Claim for Benefits

Plaintiff submitted an application for short term disability benefits for the period beginning

January 3, 2012.[2] PNMR App. 21. Plaintiff's claim was based on problems with his prostate as well as psychiatric issues. *Id.* at 21-22. In support, Plaintiff submitted medical records from his urologist, Dr. Tony Mammen, M.D.; his therapist, Patricia Lux, L.C.S.W.; his primary care physician, Dr. Tien Truong, D.O.; and his cardiologist, Dr. Mark Teng, M.D. *Id.* at 22.

By letter dated March 23, 2012, Prudential approved benefits for the period from January 3, 2012 to January 23, 2012. PNMR App. 21. However, Prudential determined that "as of January 24, 2012, [Plaintiff] no longer [met] the definition of disability . . . ." *Id.* at 22. Prudential stated that it arrived at this conclusion after conducting a "clinical review" of Plaintiff's medical records. *Id.* In particular, Prudential determined that Plaintiff became impaired from a prostate biopsy on January 16, 2012. *Id.* at 21. Following the biopsy, Plaintiff's urologist determined that Plaintiff was not acutely ill and recommended he be re-checked in six months. *Id.* at 22. In addition, a cardiologist performed a cardiac evaluation of Plaintiff and cleared him to start an exercise program without limitations on January 19, 2012. *Id.*

Regarding Plaintiff's mental health problems, Prudential reviewed documentation from Plaintiff's therapist and concluded that Plaintiff had "work issues . . . , however a loss of cognitive function is not supported." *Id.* Prudential noted that Plaintiff indicated to his therapist he experienced symptoms related to depression and anxiety, trouble focusing, frequent panic attacks, and lack of appetite. *Id.* Prudential also acknowledged that Plaintiff had been advised to try Klonopin. *Id.* Nevertheless, Prudential found that "there are no medical findings supporting that

---

[2] Plaintiff also applied for benefits under a long-term disability policy issued by Prudential. Compl. 2, ¶ 5. Though Plaintiff's application for long-term benefits was denied, he has only stated a claim related to the Short Term Plan within his Complaint. *Id.* at 4, ¶ 10. Accordingly, the Court will only address the denial of benefits under the Short Term Plan.

[Plaintiff is] unable to perform the material and substantial duties of [his] regular occupation beyond January 23, 2012 . . . ." *Id.* Accordingly, Plaintiff's claim was closed. *Id.*

Prudential's letter notified Plaintiff of his right to appeal the decision within 180 days of receipt. In addition, it stated:

> A determination on your appeal will be made within 45 days of the receipt of your appeal request. This period may be extended by 45 days, if special circumstances require an extension. You will receive written notice of the extension, the reason for the extension, and the date by which the Appeals Review Unit expects to render a decision within the initial 45-day period.

*Id.* 23.

3.     Plaintiff's Appeal

On June 29, 2012, Plaintiff appealed Prudential's decision to deny him benefits from January 24, 2012 onward. PNMR App. 25. In his letter, Plaintiff indicated that his claim for benefits for this period was based on psychiatric disability and was unrelated to the prostate issues that had formed the basis of his request for benefits from January 3 until January 23. *Id.* at 26 n.3. Plaintiff also highlighted medical records to show that his psychiatric disability continued after January 24, 2012. *Id.* at 26-30. He again referenced records from his primary care physician and his therapist, but also included records from a psychiatric outpatient facility, Sundance Behavioral Healthcare. *Id.* at 27-30.

On July 23, 2012, a Senior Appeals Analyst from Prudential acknowledged receipt of Plaintiff's request for reconsideration of his claim. *Id.* at 31. In the letter, the Analyst noted that "[w]e are performing a thorough evaluation based on the information currently in [Plaintiff's] file." *Id.* She also encouraged Plaintiff to provide any additional information to support his claim. *Id.* Finally, she stated that "[w]e anticipate making a determination on [Plaintiff's] claim by August 16,

2012." *Id.*

On August 2, 2012, psychiatrist Dr. James M. Slayton, M.D. completed for Prudential a report of his independent review of Plaintiff's medical records. PNMR App 32. The report was prepared to "assist in evaluating the claim of an inability to perform tasks." *Id.* According to his report, Dr. Slayton reviewed records from January through May 2012. These included a 20-page memorandum authored by Plaintiff detailing the chronology of his work at PNMR; medical progress notes from Plaintiff's urologist; medical consultation notes from a cardiologist; attending physician statements; "Return to Work" slips from doctors; psychotherapy progress notes; psychiatric file review notes; and partial hospital intake, progress, and discharge notes. *Id.* at 32-35. Based on these documents, Dr. Slayton found that Plaintiff did not have a psychological condition with restrictions or limitations during the relevant period. *Id.* at 36. Dr. Slayton noted that, although Plaintiff was described by his therapist as having significant cognitive impairment, the description was unsupported by objective or significant clinical data. *Id.*

On August 9, 2012, Prudential sent PNMR a letter upholding its decision to terminate Plaintiff's claim for benefits effective January 24, 2012. PNMR App. 39-43. However it was not until November 7, 2012 that Prudential notified Plaintiff of denial of his appeal.[3] *Id.* at 44. Prudential's denial letter indicated that "[a]lthough Mr. Steward's therapist has reported significant cognitive impairment, there is no cognitive screening, formal cognitive evaluation or other mental status examination throughout the records submitted by Ms. Lux to support this assertion." *Id.* at 46. Further, "[w]ith regards to Mr. Steward's reported symptoms and limitations of insomnia, inability

---

[3] Defendants explain that the delay in notifying Plaintiff was due to PNMR's own delay in responding to Prudential's August 9, 2012 letter. PNMR Reply 3.

to eat, having to be fed, dressed, and bathed by his spouse, not leaving his house and inability to concentrate, the reviewer has opined that these reports are not supported by and/or consistent with the documentation." *Id.* at 47. Ultimately, Prudential indicated "there is no objective or significant subjective clinical data within the medical documentation to support medically necessary restrictions and/or limitations from any psychological condition from January 24, 2012 forward." *Id.* Accordingly, Plaintiff's appeal was denied. He was again notified of his right to appeal the decision. *Id.* at 48.

B.    *Procedural History*

On September 21, 2012, Plaintiff sued Defendants in this Court for wrongfully denying him benefits under the Short Term Plan.[4] Compl. Since filing their respective Answers (docs. 7, 14), Prudential and PNMR have each filed motions for summary judgment (docs. 30, 27). Plaintiff has responded to both motions (docs. 49, 46) and also filed its own motion for summary judgment (doc. 34). All motions for summary judgment have been fully briefed and are ripe.

## II.

## LEGAL STANDARD

A.    *Summary Judgment*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir.

---

[4] Defendants concede that, due to Prudential's failure to timely notify Plaintiff of its denial of his appeal, Plaintiff properly exhausted his administrative remedies before filing suit. PNMR Reply 3.

2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*,

945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

B.     *ERISA*

Under Section 1132(a)(1)(B) of ERISA, a claimant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). If the ERISA plan vests the fiduciary with discretionary authority to determine eligibility for benefits or to interpret the plan's provisions, the court will review the administrator's interpretation for abuse of discretion. *Lafleur v. Louisiana Health Serv. and Indemnity Co.*, 563 F.3d 148, 158 (5th Cir. 2009). The court will also review the administrator's factual determinations for an abuse of discretion, regardless of whether the terms of a plan give the administrator such discretionary authority. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). Accordingly, the court does not upset the administrator's interpretation of the plan or his factual determinations unless they are arbitrary and capricious. *Meditrust Fin. Servs. Corp. v. The Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir. 1999). In other words, the court will uphold the administrator's decisions if there is a "rational connection between the known facts and the decision or between the found facts and the evidence." *Angel v. The Boeing Co. Retiree Health and Welfare Benefit* Plan, No. 3:04-CV-1498-D, 2006 WL 929364, at *10 (N.D. Tex. April 11, 2006) (citing *Meditrust*, 168 F.3d at 215).

### III.

### ANALYSIS

A.     *Procedural Requirements Under 29 C.F.R. § 2560.503-1*

The Court first addresses what effect–if any–Prudential's failure to timely notify Plaintiff of

its decision to uphold its denial of his appeal has on the Court's analysis. Plaintiff contends that Prudential's delayed response requires the Court employ a *de novo* standard of review. Pl.'s Br. 5 n.1; Pl.'s Reply 6-8. Defendants insist that the Court should maintain the customary abuse of discretion standard because, though Prudential was late in its notice to Plaintiff, it was timely and thorough in its review of his appeal. PNMR Resp. 4. Thus, there should be no concern about the overall adequacy of its decision-making process. *Id.*

ERISA provides certain minimal procedural requirements upon an administrator's denial of a benefits claim that are set forth in 29 U.S.C. § 1133 as well as in the regulations promulgated by the Department of Labor thereunder. *See Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998); 29 C.F.R. § 2560.503-1. Together, these require that a plan provide a claimant with adequate written notice, setting forth the specific reasons for denial. 29 U.S.C. § 1133; *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010). Further, notice should be written in a manner calculated to be understood by the participant and should afford a reasonable opportunity for a full and fair review by the administrator. *Wade*, 493 F.3d at 540; 29 C.F.R. 2560.503-1 (g) (1) (i)-(iv). Plan administrators are also required to notify a claimant of the plan's determination of his benefits claim no later than 45 days after receipt of the claimant's request for review, unless the plan administrator determines special circumstances require an extension of time for processing the claim. 29 C.F.R. § 2560.503-1 (i) (3) (i). This is true whether the administrator is deciding an initial request or subsequent appeal. *Id.*

The Fifth Circuit has stated that "[c]hallenges to ERISA procedures are evaluated under the substantial compliance standard." *Lafleur*, 563 F.3d at 154 (citing *Lacy v. Fulbright & Jaworski*, 405

F.3d 254, 256-57 (5th Cir. 2005)). This means that "technical noncompliance with ERISA procedures will be excused so long as the purpose of section 1133 has been fulfilled." *Robinson v. Aetna Life Ins.*, 443 F.3d 389, 393 (5th Cir. 2006) (internal quotation marks omitted). The purpose of section 1133 is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Schneider v. Sentry Group Long Term Disability*, 422 F.3d 621, 627-28 (7th Cir. 2005). In making its assessment of "substantial compliance," the court "considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Wade*, 493 F.3d at 539 (internal quotation marks omitted). Ultimately, "'[s]ubstantial compliance' requires 'meaningful dialogue' between the beneficiary and administrator." *Lafleur*, 563 F.3d at 154 (citing *Wade*, 493 F.3d at 540).

It is undisputed that Prudential failed to notify Plaintiff of its decision to uphold its denial of benefits within 45 days of receipt of Plaintiff's request for review.[5] PNMR App. 31, 44; Compl. This was a serious and clear violation of Prudential's obligation as a plan administrator. *See* 29 C.F.R. § 2560.503-1(i)(3)(i). Nevertheless, the Court finds that Prudential substantially complied with the procedural requirements of ERISA as a whole. Prudential's March 23, 2012 letter to Plaintiff indicates that Plaintiff submitted—and Prudential considered—a variety of documents for his claim. PNMR App. 21-22. In addition, the letter notifies Plaintiff of the specific definition of "disability" from the Short Term Plan that was used to evaluate his request. *Id.* at 22. Further, the letter includes

---

[5] None of the parties has identified the date on which notice of the decision was actually due to Plaintiff. The regulation states that a plan administrator must notify a claimant within 45 days of *receipt* of request for review. 29 C.F.R. § 2560.503-1(i)(3)(i). As the date of receipt has not been identified by the parties, the Court is left with the date the appeal was sent (June 29) and the date Prudential acknowledged receipt (July 23). PNMR App. 25, 31. If the Court calculates from the date the appeal was sent, then notice was due by August 13. If the Court uses the date Prudential acknowledged receipt, then notice was due by September 6. This means that Prudential's November 7 letter was anywhere from 62 to 86 days late.

the reason for denial, statements informing Plaintiff about how to appeal, information about the timing of the review process, and notice of his right to access copies of information used in deciding his claim to file suit under ERISA. *Id.* at 22-23. This first letter was thus thorough and provided Plaintiff with the information necessary to appeal the decision.

The later exchanges between Prudential and Plaintiff reinforce the view that there was meaningful dialogue regarding Plaintiff's claim. After the denial, Plaintiff's attorney promptly filed a letter of appeal with Prudential and submitted more documents to support the request. PNMR App. 25. Thereafter Prudential acknowledged receipt and conducted a review of its decision within the required time frame. *Id.* at 31, 39. Critically, Prudential arrived at its decision to uphold its denial within the 45-day limit. *Id.* at 39. Its final letter to Plaintiff again provided the reasons for its determination, the relevant definition on which the administrator relied, review of documents submitted, and information regarding Plaintiff's rights to appeal. *Id.* at 44-48. That Prudential failed to send this to Plaintiff within 45 days  is no doubt troubling, but it does not undermine the Court's view that the parties enjoyed a significant exchange overall. *See, e.g., Wade*, 493 F.3d at 540 (finding substantial compliance despite many procedural violations, including defendant's failure to notify Plaintiff in a timely fashion and Plaintiff's never receiving the denial letter); *Kohut v. Hartford Life and Acc. Ins. Co.*, 710 F. Supp. 2d 1139 (D. Colo. 2008) (finding a 74-day delay in notifying plaintiff of decision of appeal "inconsequential in light of the exchange of information" between the parties and the absence of any evidence defendant acted in bad faith); *Neathery v. Chevron Texaco Corp. Group Acc. Policy No. OK 826458*, No. 05 CV 1883 JM (AJB), 2006 WL 4690902, at *9 (S.D. Cal. July 31, 2006) (finding substantial compliance despite 129-day delay because administrator had engaged in ongoing communications with claimant).

Ultimately, "[w]hen considering whether an ERISA fiduciary has substantially complied with the regulations, the most important factor to consider is whether the record in a particular case creates a concern regarding the overall adequacy and integrity of the fiduciary's decision making process." *Arnold ex rel. Hill v. Hartford Life Ins. Co.*, 527 F. Supp. 2d 495, 503 (W.D. Va. 2007) (citing *Goldman v. Hartford Life and Acc. Ins. Co.*, 417 F. Supp. 2d 788, 805 (E.D. La. 2006)). The record here does not raise such concern. Accordingly, the Court finds no reason to abandon the abuse of discretion standard.[6] This does not mean, however, that the Court will disregard Prudential's transgression. The Court will consider this "procedural irregularity" in its overall analysis of whether Prudential abused its discretion. *Lafleur*, 563 F.3d at 159 (citing *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 972 (9th Cir. 2006)).

B.    *Prudential's Denial of Benefits After January 23, 2012*

The Court now considers the merits of the motions for summary judgment. The Court must determine whether questions of material fact exist regarding Defendants' alleged abuse of discretion. *See Goldman*, 417 F. Supp. 2d at 805. Under the abuse of discretion standard, an administrator's decision must be upheld if it is not arbitrary and capricious and if it is supported by substantial evidence. *See Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 397-98 (5th Cir.

---

[6] It should be noted that the abuse of discretion standard would be appropriate here even if the Court had found Prudential was *not* substantially compliant. *See Lafleur*, 563 F.3d at 159 ("Although [defendant] failed to substantially comply with the procedural requirements of ERISA, these violations were not flagrant, so the de novo standard of review . . . is not implicated. Instead, we face the more ordinary situation in which a plan administrator has exercised discretion but, in doing so, has made procedural errors."). After all, the Fifth Circuit denied a specific request to alter its standard of review despite a defendant's non-flagrant procedural failings, *see id.*, and Plaintiff here has cited no binding case law that compels this Court to act differently. Though the Court in no way excuses Prudential's delayed response to Plaintiff, the Court nevertheless shares the view that the "mere presence of a procedural irregularity is not enough to strip a plan administrator of the deferential standard of review." *McGarrah*, 234 F.3d at 1031.

2007) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)). "An arbitrary decision is one made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 828 (5th Cir. 1996). "'Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Corry*, 499 F.3d at 398 (quoting *Ellis*, 394 F.3d at 273). "Ultimately this court's review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness–even if on the low end." *Anderson v. Cytec Indus. Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quoting *Corry*, 499 F.3d at 398).

### 1.    Parties' Contentions

According to Plaintiff, he is entitled to benefits because he has "incontestably satisfied the disability standard under the governing policy that Plaintiff was unable to perform at least one of the material duties of his occupation." Pl.'s Br. 3. In particular, he highlights his diagnoses of major depressive disorder, panic disorder, and generalized anxiety disorder and resulting impairments. *Id.* at 2. He also points to the treatment notes of his therapist from May 2012, which document his "daily panic attacks, symptoms including strong heart palpitations, sweats," shaking, fear, inability to concentrate or focus clearly, as well as lack of appetite, "severe difficulty getting to sleep," and inability to maintain a restful night's sleep without nightmares. *Id.* Finally, he references psychiatric treatment records from April 2012, which again refer to his decreased concentration, anxiety, loss of energy, depression, daily panic attacks, problems of poor attention, weight loss, and feelings of irritability and powerlessness. *Id.* at 3.

Plaintiff also takes specific issue with Prudential's March 23, 2012 denial letter, which he claims falsely characterized Plaintiff as "diagnosed with simple depression and anxiety," "not receiving any medication other than Klonopin," and not obtaining proper psychiatric treatment. *Id.* at 4. Plaintiff is adamant that his medical records contradict these grounds for denial, and thus Prudential lacked "any factual or logical basis, much less reasonable basis, to deny benefits . . . ." *Id.* at 4.

Not surprisingly, Defendants disagree with Plaintiff's contentions.[7] They reiterate their claim that Plaintiff did not support his application for benefits after January 24, 2012 with medical evidence sufficient to establish disability as defined under the Short Term Plan. PNMR Resp. Br. 5. They argue that the report from Plaintiff's therapist does not contain any medical diagnosis and therefore cannot constitute a medical finding. PNMR Resp. 4. Defendants also argue that psychiatric records contained only descriptions of self-reported complaints rather than medical diagnoses. *Id.* Even if they did in fact have diagnoses, they still did not establish that Plaintiff was unable to perform the material and substantial duties of his regular occupation. *Id.* Similarly, Defendants argue that the fact that Plaintiff may have been prescribed one or more medications does not satisfy the plan's requirement of disability. *Id.*

Defendants also rely heavily on Dr. Slayton's report regarding Plaintiff's appeal, which noted that Plaintiff's therapist submitted no "cognitive screening, formal cognitive evaluation, or mental status examination throughout the timeframes submitted for review." PNMR Resp. Br. 5. "Instead, [the therapist] appeared to rely on [Plaintiff's] self-report that he had a psychological condition that

---

[7] The Court notes that, by its June 14, 2013 filing, Prudential "adopts, incorporates by reference, and joins in Defendant PNM Resources ('PNMR's') Response and Brief in Support of Response in Opposition to Plaintiff's Motion for Summary Judgment." Doc. 45.

impaired his ability to perform tasks." *Id.* In addition, Plaintiff's urologist, heart doctor, and primary care physician never indicated he could not work beyond January 24, 2012. *Id.* at 6.

### 2.   Administrative Record

Plaintiff submitted a lengthy administrative record for the Court's review. It includes a combination of self-reported symptoms and observations from his urologist, cardiologist, primary care physician, therapist, and medical staff from a psychiatric treatment facility.[8] The Court reviews them below for evidence of Plaintiff's psychiatric disability.[9]

### A.   *Urologist*

Plaintiff was under his urologist's care from January 3, 2012 until January 24, 2012. Pl.'s App. 48. Not surprisingly, records from these visits focus on Plaintiff's prostate issues. Nevertheless, there are comments that address Plaintiff's mental health. In particular, notes from the beginning of January show that Plaintiff had a recent weight gain, no weight loss, no night sweats, and appropriate mood and affect. *Id.* 65-66. They also show that, as of January 4, 2012, Plaintiff had no depression, no loss of general interest, and no severe anxiety. *Id.* at 74. However, notes from January 12 and January 23 indicate Plaintiff reported decreased energy, trouble focusing and staying alert during the day, and generalized fatigue. *Id.* at 46, 57. Still, Plaintiff's urologist indicated he could return to work on January 25, 2012. *Id.* at 48.

---

[8] Plaintiff also included a 20-page memorandum he authored that details his employment with PNMR since 2010. Pl.'s App. Ex. 1. The memorandum explains Plaintiff's work-related grievances and discusses his stress and anxiety. Accordingly, the Court considers it in its analysis of Plaintiff's present motion.

[9] The Court recognizes that some of these records pre-date the onset of Plaintiff's alleged disability. Nevertheless, the Court finds it appropriate to consider them to the extent they either support or contradict Plaintiff's claim of symptoms during this time. For example, Plaintiff argues the severity of his depression and anxiety by highlighting, in part, severe weight loss that began prior to January 23. The Court thus looks to his medical records before that date to see whether they substantiate his argument.

B.      *Cardiologist*

Plaintiff consulted a cardiologist on January 19, 2012 because of heart palpitations and shortness of breath. Pl.'s App. 94. Records from this visit show that Plaintiff had neither gained nor lost weight; was negative for depression or hallucinations; had an appropriate mood; and was cleared to start an exercise regimen without limitations. *Id.* at 95.

C.      *Primary care physician*

Plaintiff saw his primary care physician, Dr. Truong, throughout January 2012. On January 17 Plaintiff reported being tired all the time. Pl.'s App. at 113. In addition, on January 27 he complained of anxiety, stress, and insomnia due to increased stress at work *Id.* at 111. In response, Dr. Truong recommended Plaintiff continue seeing his therapist and try a prescription of Klonopin. *Id.* A "Return to Work" slip from January 31, 2012 shows that Plaintiff had been "partially incapacitated" from January 25, 2012 until February 3, 2012, but only due to an upper respiratory infection. *Id.* at 87. There was no mention of any depression or anxiety on the form. *Id.*

D.      *Therapist*

Plaintiff began seeing his therapist, Patricia Lux, on January 26, 2012. Pl.'s App. 124. Ms. Lux's notes from May 8, 2012, which appear to summarize Plaintiff's seven visits until that date, show, *inter alia,* a "preliminary diagnosis" of panic disorder without agoraphobia. *Id.* They also indicate Plaintiff had occupational problems; daily panic attacks; inability to concentrate or focus clearly when driving, following conversations or other activities; little-to-no appetite; and severe difficulty getting to sleep. *Id.* In addition, Ms. Lux commented that Plaintiff "demonstrates significant impairment in cognitive functioning at this time. [Plaintiff's] hands shake in session and he has difficulty focusing to answer direct questions." *Id.* at 125. Finally, she recommended Plaintiff go to

Sundance Behavioral Healthcare facility for an assessment. *Id.*

   E.  *Sundance Behavioral Healthcare*

On March 28, 2012, per Ms. Lux's recommendation, Plaintiff visited Sundance Behavioral Healthcare ("Sundance") for treatment for continued psychological distress. *Id.* at 138. The Integrative Psychiatric Assessment from that date indicates Plaintiff complained of daily panic attacks and sweats beginning in September 2011. *Id.* at 143. In addition, he complained of decreased concentration, shaking, fear, and weight loss of 50 lbs. over the preceding two to three months. *Id.* at 143, 150. Notes further indicate he provided rambling answers to questions, appeared anxious, and had impaired cognitive functioning. *Id.* at 143. However, the portion of the assessment entitled "Mental Status Examination" showed that Plaintiff had appropriate thought content, no abnormalities in sense or perceptions, fair insight, intact memory, and ability to recall recent and remote events. *Id.* at 153. It also indicated he was oriented to time, place, person, and situation. *Id.* Lastly, it revealed he had a poor attention span, was anxious, and spoke rapidly but softly. *Id.*

Plaintiff recorded a series of complaints on the forms himself. Regarding inattention, he indicated he "often": has trouble keeping attention on tasks or play; has trouble following through on instructions; avoids or dislikes activities that require sustained mental effort; and is forgetful in daily activities. Pl.'s App. 159. He "sometimes": fails to pay attention to detail or careless errors; has trouble organizing activities and tasks; and loses things necessary for daily tasks (pencils, paper, etc.). *Id.* Regarding depression, he noted that he currently was depressed or irritable most of the day and had severe decreased interest in pleasurable activities. *Id.* at 160. In addition, in the past he had changes in weight or appetite; trouble falling asleep; restlessness; slow movements; fatigue; and decreased concentration. *Id.* Regarding anxiety and mood, Plaintiff noted that he "often": seems

edgy, restless, or keyed up; looks and feels tired; has trouble concentrating due to worry; complains of sleeplessness due to worry; suffers from panic attacks; has difficulty rising in the morning; poor sleep; and nightmares. *Id.* at 161-62. He indicated that his anxiety and depression started in September 2011, and in the previous two weeks the severity of his depression was a 10 out of 10. *Id.* at 160.

Based on these symptoms and the psychiatric assessment, a Sundance clinician recommended Plaintiff follow the Partial Hospitalization Program, designed for patients with "moderate risk of behavior that is threatening, destructive, or disabling to self/others." *Id.* at 154. In addition, Plaintiff was to increase visits with his therapist to twice weekly and receive outpatient psychiatric care to address: (1) anxiety, as evidenced by daily panic attacks and low concentration; and (2) depression, as evidenced by reduced sleep, reduced appetite, and the alleged weight loss. *Id.* at 206, 155. This assessment was completed by Ginny Hunsucker, an LPC intern, and later reviewed by the attending physician, Dr. Wasiq Zaidi, M.D. *Id.* at 157.

On April 2, 2012, Plaintiff was admitted into the day hospital program at Sundance "for increased mood instability to include increased anxiety," where he was started on the medication BuSpar. *Id.* at 130. Nurses' records from April 2, 3, and 4, 2012, indicate that he was cooperative, oriented, and displayed organized thoughts, adequate or fair insight, and impaired judgment, despite the fact Plaintiff reported feeling depressed, anxious, irritable and having a decreased appetite and difficulty sleeping. *Id.* at 179-81. Plaintiff was absent from treatment on April 5, 6, 9, and 10 because of financial constraints. *Id.* at 182-84; Pl.'s Resp. 6. Consequently, he was discharged for nonparticipation. *Id.* at 130. The Short Stay Summary, completed by Dr. Zaiqi, indicates final diagnoses of "major depression, single, severe" and "panic disorder, NOS." *Id.* Plaintiff's condition

on discharge was noted as "[e]ssentially unchanged in light of brevity of stay and discharge related to frequent absences." *Id.* No follow-up care was recommended due to Plaintiff's absences and nonparticipation. *Id.*

3.    Abuse of Discretion Analysis

Though the record clearly indicates that Plaintiff suffered from mental health issues after January 23, 2012, it fails to show that Prudential's denial was arbitrary and capricious. Indeed, the Court finds a rational connection between the facts known and Defendants' decision to deny him disability benefits.

Under the Short Term Plan, a claimant must demonstrate objective medical evidence that he is incapable of performing the essential function of his own job or any other job that the company offers, for which he is reasonably qualified. PNMR App. 10. Thus, Plaintiff's insistence that he established disability because he was "unable to perform *at least one* of the material duties of his occupation" is inapposite. Pl.'s Br. 3 (emphasis added). Further, his argument that as a matter of law he could not perform the material duties of any occupation because he could not drive himself to work, lost significant cognitive functioning, and is "debilitated by multiple physical and psychological manifestations of panic and anxiety" is likewise unpersuasive. *Id.* at 4. Not only does Plaintiff misstate the relevant standard of disability, he also fails to identify the essential function of his job and explain how his limitations prevented him from performing it.

Another critical shortcoming is Plaintiff's failure to include objective measurements of his alleged disability. Though Plaintiff's evidence goes beyond his own reported symptoms, the medical records provided do not explain how his diagnoses limit his ability to perform the core function of his job. The assessment from Sundance reveals that Plaintiff had daily panic attacks and "impaired

cognitive functioning." However, there is no explanation of this conclusion or any indication that these symptoms "disabled" him within the meaning of the Short Term Plan. Indeed, Plaintiff reported his daily panic attacks began in September 2011, long before he claimed to be disabled. In addition, it is not clear what "impaired cognitive functioning" means or how it effected Plaintiff's ability to perform, especially when read in conjunction with other notes from the assessment that show Plaintiff had "appropriate" thought content, normal sense/perceptions, fair insight, proper orientation, and normal memory. In other words, the record is mixed regarding Plaintiff's cognition.

Regarding Plaintiff's inability to drive and severe weight loss, the evidence also contradicts Plaintiff's claims. The letters exchanged regarding the initial denial of Plaintiff's claim and his subsequent appeal show that Plaintiff was not unable to drive but rather had difficulty doing so. Pl.'s App. 4, 7-8. Further, Plaintiff's alleged 50 lb.-weight loss over two to three months is unsupported by medical records. Though Plaintiff's weight did indeed fluctuate–going from 236 lbs. on January 4 to 221 lbs. on January 19 to 240 lbs. by the time he checked into Sundance in April, he did not experience the extreme weight loss he claims. Pl.'s App. 66, 95, 178. Indeed he experienced an overall weight gain. Thus the evidence falls short of establishing disability.

To be clear, the Court does not doubt Plaintiff's depression or anxiety or the many side effects he experienced. Nevertheless, it must acknowledge that the question before it is whether Defendants abused their discretion in denying Plaintiff's claim and appeal. The answer is no. Without any objective measurement of Plaintiff's limitations, there was no way Defendants could have determined whether his impairments prevented him from performing his job or another one for which he was reasonably qualified. *See Anderson*, 619 F.3d at 514 ("Without some objective measurement of [plaintiff's] functional limitations, [defendant] had no way to determine whether [plaintiff's]

concentration was impaired to the point that he could not perform his job or 'any similar occupation which his Employer may provide.'"). Further, an independent psychiatrist analyzed all of the medical records provided and found that "there was insufficient information to support the claimant's belief that he had a psychological condition with restrictions or limitations." PNMR App. 38. Thus, Defendants did not simply dismiss Plaintiff's complaints of depression, anxiety, or other distress. Instead, Defendants examined the record and reasonably determined there was not enough to support a finding of total disability. That this contradicted the opinion of Plaintiff's therapist is not indicative of an abuse of discretion: "the administrator, under the established standard of review that restricts the courts, was not obliged to accept the opinion of [Plaintiff's therapist]. In this 'battle of the experts' the administrator is vested with discretion to choose one side over the other." *Corry*, 499 F.3d at 401. The Court therefore finds that the decision to deny benefits was not arbitrary or capricious.

### 4.    Substantial Evidence Analysis

The Court now considers whether, in light of the entire record, substantial evidence supports the determination that Plaintiff was not disabled. It bears repeating that "the law requires only that substantial evidence support a plan fiduciary's decisions, including those to deny or to terminate benefits, not that substantial evidence (or, for that matter, even a preponderance) exists to support the employee's claim of disability." *Corry*, 499 F.3d at 402 (quoting Ellis, 394 F.3d at 273). Thus, it does not matter for the present analysis whether the sum of Plaintiff's complaints could suffice to establish substantial evidence of disability. Here the Court inquires whether substantial evidence supports Defendants' conclusion that he was not entitled to benefits.

As discussed above, the records concerning Plaintiff's psychiatric care are mixed. They reveal

symptoms of extreme depression and anxiety but no explanation of any functional limitations with respect to his job. In some cases the evidence even shows normal or only moderately limited cognition. The records of Plaintiff's physicians throughout January are likewise mixed. They show complaints of generalized fatigue and difficulty focusing, but not extreme weight loss, night sweats, or prolonged depression and anxiety–the very symptoms Plaintiff alleges plagued and eventually debilitated him. Further, Prudential's own medical personnel concluded that, based on his symptoms and the doctors' reports, Plaintiff had no psychological restrictions or limitations. Accordingly, the Court finds substantial evidence exists to support Defendants' conclusion that Plaintiff was not disabled within the meaning of the Short Term Plan.

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion is **DENIED**. Defendant PNMR's motion is **GRANTED**. The Court does not reach the merits of Prudential's motion for summary judgment in light of its finding that Defendants' denial was not an abuse of discretion. Accordingly, the case is **DISMISSED WITH PREJUDICE**.

SO ORDERED.

SIGNED: January 10, 2014.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE